**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1542

SUSAN HARRIMAN,

    Plaintiff – Appellant,

 v.

ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.,

    Defendant – Appellee.

No. 22-1694

SUSAN HARRIMAN,

    Plaintiff – Appellee,

v.

ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC.,

    Defendant – Appellant.

Appeals from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (2:18-cv-02750-DCN)

Argued: October 24, 2023               Decided: January 24, 2024

Before HEYTENS and BENJAMIN, Circuit Judges, and Elizabeth W. HANES, United States District Judge for the Eastern District of Virginia, sitting by designation.

Judgment in No. 22-1542 affirmed and appeal in No. 22-1694 dismissed by published opinion. Judge Heytens wrote the opinion, in which Judge Benjamin and Judge Hanes joined.

**ARGUED:** Oana Dobrescu Johnson, OANA D. JOHNSON, ATTORNEY AT LAW, Charleston, South Carolina, for Appellant/Cross-Appellee. Catherine L. Hanna, HANNA & PLAUT L.L.P., Austin, Texas, for Appellee/Cross-Appellant. **ON BRIEF:** Douglas W. MacKelcan, Skyler C. Wilson, COPELAND, STAIR, VALZ & LOVELL, LLP, Charleston, South Carolina, for Appellee/Cross-Appellant.

2

TOBY HEYTENS, Circuit Judge:

Susan Harriman appeals a judgment against her in a suit she brought challenging an insurance company's failure to provide a defense when she was sued for defamation. The insurance company cross appeals, claiming the district court should have granted it summary judgment on different grounds. We dismiss the cross appeal as unnecessary and not properly taken. On the merits, we affirm.

I.

Harriman was a registered representative and investment advisor with IMS Securities, Inc. In 2014, Harriman approached representatives from Palmaz Scientific about investing in the company for an IMS client. Harriman claims that, while doing so, she discovered damning information about Palmaz and its CEO and "blew the whistle" by sharing the information with her clients. JA 725.

To put it mildly, Palmaz had a different view. In August 2015, Palmaz sued Harriman for defamation in federal district court. That suit was dismissed because there was no federal question and the parties were not diverse. See *Palmaz Sci., Inc. v. Harriman*, No. 15-cv-0734, 2015 WL 13298400 (W.D. Tex. Oct. 7, 2015). But then Harriman sued Palmaz in Texas state court, and Palmaz responded by asserting its defamation allegations as counterclaims.

This litigation involves Harriman's efforts to make Associated Industries Insurance Company pay for her defense against Palmaz's claims. IMS (the company Harriman was working for at the time of the relevant actions) had an insurance policy with Associated, and that policy covered IMS's representatives and investment advisers like Harriman. Such

3

agents, however, were covered only for "Wrongful Act[s]" "committed in the rendering or failing to render Professional Services on behalf of [IMS]." JA 101 (quotation marks removed). As defined in the policy agreement, a "Wrongful Act" was "any actual or alleged negligent act, error, omission, misstatement, misrepresentation or breach of duty by an Insured . . . in rendering or in failing to render Professional Services for [an IMS] client." JA 105. "Professional Services" were defined as six types of "services which are provided by [IMS] to others," including "Investment Advisory Services" and "the sale and/or serving of Securities." JA 104.

After Palmaz asserted its counterclaims in state court, Harriman told Associated about the federal and state court suits and requested a defense. An attorney examined the relevant documents and denied coverage. The coverage letter explained that "none of the conduct alleged in the [state court] Counterclaims involved a 'Wrongful Act' committed in the rendering of or failure to render 'Professional Services' within the meaning of the Associated Policy." JA 200. Instead, the letter concluded, "[a]ll of the claims asserted in the Counterclaims [were] based on Harriman's alleged harassment of" Steven Solomon (Palmaz's CEO) "and her disparagement of Palmaz" and involved "conduct occurr[ing] after Solomon declined Harriman's offer to provide services to Palmaz and her solicitation with respect to Palmaz's then-current offering." *Id*. Because the counterclaim contained "no allegation . . . that Harriman and/or IMS Securities ever provided any services involving 'the sale and/or servicing of Securities' to Palmaz," the letter concluded "any wrongful conduct allegedly committed by Harriman could not have occurred in rendering or failing to render 'Professional Services.'" *Id*.

4

After receiving Associated's letter, Harriman undertook her own defense and spent more than $1 million in legal fees. Two years later, a lawyer suggested Harriman seek coverage under a different policy she had with Travelers Insurance Company. Harriman tendered a claim, and Travelers agreed to defend her and cover all litigation costs from then on. The case eventually settled on Travelers' dime.

Around the time she was settling her dispute with Palmaz, Harriman sued Associated in federal district court in South Carolina. The complaint asserted claims for: (1) breach of contract; (2) insurance bad faith; and (3) a declaratory judgment.

The district court granted summary judgment to Associated. The court first rejected Associated's argument that—regardless of whether Harriman had other insurance—Palmaz's allegations never triggered its duty to defend. But the district court still granted summary judgment to Associated on the breach of contract and declaratory judgment claims because it concluded the Associated coverage "was excess to the primary coverage provided to Harriman under her Travelers Policy." JA 678. The district court also granted summary judgment to Associated on the bad faith claim, concluding the Travelers policy constituted "reasonable grounds for denying Harriman coverage." JA 684.

After losing on summary judgment, Harriman filed multiple post-judgment motions. As relevant here, the first motion asked the district court to reconsider its ruling on the bad faith claim because there was no evidence Associated knew about the Travelers policy when it denied coverage. Despite agreeing this point was well-taken, the district court concluded Associated was still entitled to summary judgment on the bad faith claim because Harriman "failed to assert any damages that flow[ed] from the failure to provide[]

5

her benefits she was purportedly owed as set out by contract." JA 719. Harriman's second post-judgment motion asked the district court to certify a question involving her breach of contract claim to the Supreme Court of South Carolina. The district court denied that motion.

Harriman appeals the district court's grant of summary judgment and its denial of her motion to certify. Associated cross appeals, challenging the district court's conclusion that its policy's terms were broad enough to cover Palmaz's claims and asserting the district court also should have granted summary judgment on the bad faith claim on the grounds that it had a reasonable basis for denying coverage.

II.

We start by dismissing Associated's cross appeal. True, the district court did not accept every argument Associated made and ruled against it on some matters. But appellate courts review "judgments, not statements in opinions," *Black v. Cutter Lab'ys*, 351 U.S. 292, 297 (1956), and the judgment we review here rejected Harriman's entire suit on the merits. Associated could not have appealed that judgment because it was not adversely affected by that judgment in any way. See, *e.g.*, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980). And once Harriman appealed, Associated was entitled to defend its victory on any basis supported by the record, even if some of its arguments "involve an attack upon the reasoning of the lower court." *United States v. American Ry. Express Co.*, 265 U.S. 425, 435 (1924). Because Associated's cross appeal merely seeks affirmance of a favorable judgment on an alternative ground, that cross appeal "must be dismissed." *Reynolds v. American Nat'l Red Cross*, 701 F.3d 143, 155–56 (4th Cir. 2012).

6

III.

We next hold the district court did not abuse its discretion in denying Harriman's belated certification request. See *McKesson v. Doe*, 592 U.S. 1, 5 (2020) (choice to certify is committed to "the sound discretion of the" court to which a request is made). Harriman was not pulled into federal court by Associated's removal of a case filed initially in state court. Instead, Harriman "chose to file suit in a federal forum" and seek a federal court's resolution of her claims. *Thompson v. Ciox Health, LLC*, 52 F.4th 171, 173 (4th Cir. 2022). Nor did Harriman assert from the start that state law was so unclear as to warrant certification. To the contrary, Harriman litigated the issues before the district court, lost, and then asked that court to give her another shot by asking the state courts to weigh in. "This Court has declined requests for certification in analogous circumstances" (*id.*), and the district court acted well within its discretion in doing so here.

IV.

With that underbrush cleared, we arrive at the merits. As always, we review the district court's summary judgment ruling de novo, applying the same legal standards as that court. See, *e.g.*, *Noonan v. Consolidated Shoe Co.*, 84 F.4th 566, 572 (4th Cir. 2023).

A.

We begin with Harriman's contract and declaratory judgment claims. The district court concluded Associated was never obligated to defend Harriman because Palmaz's claims triggered both its policy and the Travelers policy, and the terms of those policies made Travelers the primary coverage provider. We agree.

7

The Associated policy contained an "Other Insurance" clause, which outlined how the policy interacted with others providing overlapping coverage. JA 112. That clause stated that the coverage provided by the Associated policy "shall be excess over any other valid and collectable insurance available to the Insured . . . unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Policy." *Id*. The question is whether that clause was triggered. Like the district court, we conclude it was.

For starters, we know that Travelers did, in fact, provide coverage to defend against Palmaz's allegations. And it is not hard to see why. The Travelers policy covered "sums that the insured becomes legally obligated to pay as damages" stemming from the "[o]ral or written publication" of "material that slanders or libels" an organization or their services. JA 496 (first quote), 501 (second and third quotes). Palmaz's allegations—which accused Harriman of bad mouthing Palmaz to potential investors—fell comfortably within that language.

Even so, Harriman insists Associated also had to provide coverage because the two policies were not "concurrent." Harriman Br. 13–18. Each of Harriman's arguments are quickly disposed of under South Carolina law.

To begin, the Supreme Court of South Carolina has said we need not apply any special interpretive "rule[s] to allocate priority between the two carriers" where—as here—the two policies "are not mutually repugnant." *South Carolina Farm Bureau Mut. Ins. Co. v. S.E.C.U.R.E. Underwriters Risk Retention Grp.*, 578 S.E.2d 8, 11 (S.C. 2003). The Travelers policy said it provided "primary" coverage unless a series of inapplicable

8

exceptions applied. JA 427. The Associated policy said its coverage was "excess" unless another policy was "written only as specific excess insurance over" the Associated policy. JA 112. The Travelers policy was not so written. Thus, the two policies agreed on the outcome here: The Travelers policy provided primary coverage, and the Associated policy provided excess coverage.

In contrast, the decisions Harriman relies on involve situations where two policies conflicted or were ambiguous about how they interacted. In one, the relevant policies *both* said their coverage was "in excess of the amount due from" any other policy "covering the same loss or damage." *South Carolina Ins. Co. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 489 S.E.2d 200, 212 (S.C. 1997). In another, both policies contained "other insurance" clauses purporting to limit the amount one insurer must pay. See *Michelin N. Am., Inc. v. Federal Ins. Co.*, No. 6:17-1599-HMH, 2017 WL 11458023, at *2 (D.S.C. Nov. 7, 2017). As a result, those courts thus had to look beyond the language of the conflicting clauses to determine how the policies interacted. Here, in contrast, we need only apply the Associated and Travelers policies as written. See *South Carolina Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990) ("In the absence of ambiguity, the terms of an insurance policy . . . must be interpreted and enforced according to their plain and ordinary meaning.").

Harriman also insists that, because Travelers agreed to pay only her post-tender litigation costs, the cost of her pre-tender defense was not "collectable" and thus falls outside the Associated policy's definition of "other insurance." Harriman Br. 18–20. To support this claim, Harriman relies on the thinnest of reeds: an unpublished federal district court decision applying the law of a different State (Illinois). See *id.* (citing *Rhone-*

9

*Poulenc, Inc. v. International Ins. Co.*, No. 94-C-3303, 1996 WL 328011, at *13 (N.D. Ill. June 11, 1996)).

We need not venture so far afield. In South Carolina, the duty to defend arises when a covered lawsuit is *filed*—not when the insured gives notice of that suit or demands a defense. See *Allstate Ins. Co. v. Wilson*, 193 S.E.2d 527, 530 (S.C. 1972) (insurer's obligation to defend "existed from the time the actions were instituted and continued until it fulfilled its obligation under its policy").[1] For that reason, it appears that, under South Carolina law, an insurer that owes a duty to defend must reimburse the insured party for reasonable costs incurred both before and after notice of the suit was tendered. Cf. *Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 53 F. Supp. 3d 816, 828–30 (D.S.C. 2014) (collecting cases and predicting how South Carolina courts would treat the issue). We express no view about whether Harriman has a claim against Travelers based on its refusal to reimburse Harriman for costs she incurred before seeking coverage. We hold only that Harriman's failure to collect such amounts from Travelers did not obligate Associated to provide them.

From there, our analysis moves briskly. The Travelers policy provided "Primary Insurance" (JA 427), and the Associated policy provided "excess" coverage (JA 112). The general rule is "that an excess insurer" (like Associated) "that has a duty to defend is not obligated to provide a defense if the primary insurer" (here, Travelers) "is so obligated."

---

[1] At oral argument, Harriman suggested the duty-to-defend question here—at least as it relates to Travelers—is governed by Texas or Colorado law. See Oral Arg. 12:21–12:51. That claim is waived because Harriman made no such argument in her opening brief. See, *e.g.*, *Short v. Hartman*, 87 F.4th 593, 615 (4th Cir. 2023).

10

Allan D. Windt, *Excess insurer's duty to defend*, 1 Insurance Claims and Disputes § 4:11 (6th ed. 2023); accord *ContraVest Inc. v. Mount Hawley Ins. Co.*, No. 9:15-cv-00304-DCN, 2020 WL 901459, at *5–6 (D.S.C. Feb. 25, 2020) (applying South Carolina law). Seeing no reason to believe South Carolina's highest court would reach a different result, we affirm the district court's grant of summary judgment to Associated on Harriman's breach of contract and declaratory judgment claims.[2]

B.

Finally, we address Harriman's bad faith claim. To prevail on that claim, Harriman needed to show: "(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396–97 (S.C. 1992).

The district court ultimately granted summary judgment for Associated on this claim because it concluded Harriman failed to create a genuine issue of material fact about whether she suffered any damages. Harriman challenges that conclusion, asserting two

---

[2] When asked at oral argument, Harriman described *Royal Insurance Co. of America v. Reliance Insurance Co.*, 140 F. Supp. 2d 609 (D.S.C. 2001), as her best case on this point. See Oral Arg. 3:54–5:18. That decision, however, is inapt because it involved a situation where an excess insurer was suing a primary insurer for violating an asserted duty "never to compromise their joint leverage with respect to plaintiffs." *Royal Ins. Co.*, 140 F. Supp. 2d at 610–11. We also express no view about whether the specific language of Associated's policy could have warranted a different result on the duty-to-defend point because Harriman made no such argument. See Oral Arg. 34:34–35:07 (Harriman so acknowledging).

11

damages theories she believes are sufficient. We need not address whether either of these theories holds up because we conclude Harriman failed to create a genuine dispute of material fact about the reasonableness of Associated's refusal to defend. We thus affirm the district court's grant of summary judgment on Harriman's bad faith claim on that alternative ground. See *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009) ("[We] may affirm on any grounds apparent from the record.").

For starters, the district court got it right when it rejected the argument that the existence of the Travelers policy—standing alone—gave Associated a good faith basis to deny Harriman coverage. Under South Carolina law, the reasonableness of an insurer's actions are assessed when it denies coverage, and "[e]vidence that arises after the denial of the claim is not relevant to the propriety of the conduct of the insurer at the time of its refusal." *Howard v. State Farm Mut. Auto. Ins. Co.*, 450 S.E.2d 582, 584 (S.C. 1994). Because Associated did not know about the Travelers policy until a year after it sent its coverage denial letter, Associated could not rely on that policy as a defense to Harriman's bad faith claim.

At the same time, we conclude Harriman failed to present any evidence that would permit a factfinder to conclude Associated lacked a reasonable basis for its coverage decision. South Carolina law defines "bad faith" as the "knowing failure on the part of the insurer to exercise an honest and informed judgment in processing a claim." *Doe v. South Carolina Med. Malpractice Liab. Joint Underwriting Ass'n*, 557 S.E.2d 670, 674 (S.C. 2001). In addition, "[i]f there is a reasonable ground for contesting a claim, there is no bad

12

faith," even if a court later concludes an insurer breached its duty to defend. *Crossley*, 415 S.E.2d at 397.

As a reminder, Associated denied coverage based on an attorney's determination that Palmaz's allegations did not trigger the Associated policy. Courts applying South Carolina law have held that, when an insurer relies on an expert's coverage opinion, the party asserting bad faith must present evidence showing the insurer knew or had reason to know the attorney's report was somehow faulty. See, *e.g.*, *BMC Distribs. of S.C., LLC v. National Union Fire Ins. Co. of Pittsburgh*, No. 12-178-RMG, 2013 WL 11328259, at *3 (D.S.C. June 13, 2013). To make out a bad faith claim, Harriman thus needed to do more than raise questions about the correctness of Associated's coverage decision—she needed to create a genuine dispute of material fact about whether Associated acted so cavalierly as to violate the implied covenant of good faith and fair dealing. See *Crossley*, 415 S.E.2d at 397 (reversing judgment for an insured party because the insurer "did not breach its implied covenant of good faith").

Harriman failed to clear that hurdle. Despite challenging the attorney's interpretation of the terms "professional services" and "wrongful acts" in the Associated policy, Harriman's briefs offer no response to Associated's argument that her bad faith claim failed as a matter of law because the attorney's coverage opinion was, at minimum, reasonable. See Associated Br. 35–37. To be clear, we do not endorse Associated's broadest argument—that Harriman's claim is "negated as a matter of law" because Associated relied on its attorney's recommendation. *Id.* at 36; see *Varnadore v. Nationwide Mut. Ins. Co.*, 345 S.E.2d 711, 713 (S.C. 1986) (rejecting a

13

similar argument). Instead, we hold only that Harriman failed to present evidence raising a genuine dispute of material fact here.

\*     \*     \*

As with every diversity case, it is possible South Carolina's highest court would see matters differently than we have. But Harriman assumed that risk by choosing a federal forum. The appeal in No. 22-1694 is dismissed. The judgment in No. 22-1542 is affirmed.

*SO ORDERED*

14